# United States Court of Federal Claims

No. 09-675 C
(Filed Under Seal: December 23, 2009)
(Reissued: January 7, 2010)[*]

| | |
|---|---|
| **Madison Services, Inc.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**United States of America,**<br><br>*Defendant.* | Bid Protest; Negotiated Procurement; Cancellation; 28 U.S.C. § 1491; Standing; Interested Party; Justiciability; Ripeness; Mootness; RCFC 15; Supplemental Pleading |

*Wayne A. Keup*, Wayne A. Keup, PLLC, Washington, DC, for plaintiff.

*Devin A. Wolak*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION and ORDER

**BLOCK,** *Judge.*

On October 7, 2009, plaintiff, Madison Services, Inc. ("Madison"), filed this pre-award bid protest. Madison challenged the expressed intention of the Federal Emergency Management Agency ("FEMA") to reissue, per the recommendation of the United States Government Accountability Office ("GAO"), a previously concluded solicitation in which plaintiff was the intended awardee. Arguing that FEMA had yet to make its final decision, defendant first moved to dismiss the protest for lack of ripeness. Thereafter, on November 4, 2009, defendant filed a renewed motion to dismiss, notifying the court that FEMA had formally cancelled the solicitation in question and arguing that the protest was thus moot. Plaintiff promptly moved for leave to amend its complaint, seeking to add a second claim challenging FEMA's cancellation decision.

On December 8, 2009, the court conducted a recorded status conference, in order to decide these motions and to set an expedited schedule for the remainder of this matter. This opinions clarifies and sets forth the reasoning for the court's rulings. Notably, the court grants defendant's renewed motion to dismiss the original protest, but grants plaintiff's motion to amend its complaint, thus allowing the protest to proceed as to FEMA's cancellation decision.

---

[*] This opinion originally was issued under seal on December 23, 2009. The court afforded the parties an opportunity to propose redactions in the opinion prior to its publication, but no such redactions were proposed. Accordingly, the opinion is herein reissued for publication, unsealed.

## I. BACKGROUND

On April 10, 2009, FEMA issued its Request For Proposals No. HSFEHQ-09-R-0046 (the "RFP" or "solicitation"). Administrative Record ("AR") 694. The RFP posted electronically on Federal Business Opportunities, the Internet-based, point-of-entry for federal procurements. *See* FAR 2.101 ("Government-wide point of entry"). The RFP sought on-site facility support services for temporary housing units at various locations throughout the United States. AR 352. FEMA listed the RFP under the procurement classification code 99, a "miscellaneous" product code. AR 133, 699. After the close of bidding and evaluation of all offers, FEMA informed plaintiff that it was the intended awardee. Compl. ¶ 21.

Before the award was made final, however, TMI Management Systems, Inc. ("TMI"), one of the incumbent FEMA contractors, AR 688, filed a protest with GAO. *TMI Mgmt. Sys., Inc.*, B-401530, 2009 CPD ¶ 191 (Comp. Gen. 2009). TMI alleged that FEMA had misclassified the RFP, masking it from TMI's daily searches for contracting opportunities listed under classification codes more appropriate to the services sought. *Id.* at *2. After receiving confirmation from FEMA that Madison was the intended awardee, GAO allowed Madison to intervene in the protest, as an interested party. *See* Pl.'s Mot. for J. at 5; AR 666 (Plaintiff's Notice of Intervention in the GAO protest). GAO ultimately sustained TMI's protest, finding that FEMA's misclassification had unreasonably deprived TMI of the opportunity to respond to the solicitation, in violation of FEMA's obligation, under the Competition in Contracting Act,[1] to ensure full and open competition. *TMI Mgmt. Sys., Inc.*, 2009 CPD ¶ 191, at *4. GAO recommended that FEMA re-open competition and reissue the solicitation under a more appropriate classification code. *Id.*

Nine days later, Madison filed the instant protest, challenging FEMA's "expressed intention" to follow GAO's recommendation. Compl. ¶ 31. Plaintiff alleged that "[o]n October 1, 2009, FEMA counsel notified Madison that a decision had been made to follow the GAO recommendation." Pl.'s Mot. for J. at 7. Plaintiff argued that FEMA's original classification code selection was reasonable, Compl. ¶¶ 33, 35, that GAO's contrary finding and recommendation were erroneous, *id.* ¶¶ 34, 36, and that a choice by FEMA to comply with GAO's recommendation would itself be unreasonable, *id.* ¶ 37. The original complaint, challenging the purported reissuance decision, recited three counts (I–III), including plaintiff's requests for declaratory and injunctive relief. *Id.* ¶¶ 32–47.

Defendant has twice moved for dismissal. In its first motion, defendant asserted that the agency action under protest had simply not occurred, and that "FEMA retain[ed] the ability to continue its consideration of this issue, and its ultimate decision [was] not yet known." Def.'s Mot. to Dismiss at 7. Accordingly, defendant contended that the protest was "premature." *Id.* at 8. Ultimately grounding its argument in the doctrine of ripeness, defendant argued further that this lack of ripeness deprived the court of jurisdiction over plaintiff's protest. Def.'s Reply in Supp. of Def.'s Renewed Mot. to Dismiss at 3.–4. For its part, plaintiff simply responded that "FEMA has indicated unequivocally its intention to follow the GAO recommendation." Pl.'s Mot. for J. at 21.

---

[1] Codified, in pertinent part, at 41 U.S.C. § 253(a)(1)(A).

On November 4, 2009, the eve of oral argument on all dispositive motions, defendant filed a renewed motion to dismiss. Notifying the court that FEMA had, that very day, formally cancelled the solicitation, defendant argued that the protest was now moot.[2] Def.'s Renewed Mot. to Dismiss at 3–4. FEMA's cancellation notice indicated that the scope of the agency's needs, and of the contract services it sought, had changed so substantially as to necessitate cancellation and issuance of a new solicitation. *See id.*, App'x, Attachment A. In response, plaintiff promptly moved to amend its complaint. The proposed amended complaint incorporates plaintiff's original challenge (counts I–III), and adds three counts (IV–VI) challenging FEMA's cancellation of the solicitation, and seeking declaratory and injunctive relief from that decision. Am. Compl. ¶¶ 25–42.

## II. DISCUSSION

The court has "jurisdiction to render judgment on an action by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). In exercising this "bid protest" jurisdiction, which encompasses the instant matter, the court reviews the challenged agency action pursuant to the standard set forth in section 10(e) of the Administrative Procedures Act ("APA"). 28 U.S.C. § 1491(b)(4) (incorporating 5 U.S.C. § 706); *see Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Pursuant to the APA standard, the court must hold unlawful and set aside any "agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). In order to establish standing as an "interested party" under § 1491(b), a protestor must be an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). In turn, to establish this requisite impact or "prejudice" to its direct economic interests, a protestor must show that there is "a substantial chance it would have received the contract award" but for the alleged agency violation. *Id.*

Notwithstanding the court's special jurisdiction and the unique nature of a bid protest, the instant matter is also subject to overarching legal doctrines governing all suits in federal court. Pertinent, namely, are the justiciability doctrines of ripeness and mootness, along with the court's rules and longstanding principles governing a plaintiff's right to amend its pleadings.

### A. Plaintiff's Original Challenge Is Nonjusticiable

Justiciability encompasses a number of doctrines that were developed, at least in part, to give effect to the limitations placed upon the federal judicial power by Article III of the Constitution. *See* U.S. CONST. art. III, § 2, cl. 1; *Flast v. Cohen*, 392 U.S. 83, 94–95 (1968). The Court of Federal Claims was created pursuant to Article I of the Constitution. *See* 28 U.S.C. § 171. Nevertheless, it is now settled that the justiciability doctrines apply fully to this and other Article I courts, which exercise the judicial power of the United States. *See Freytag v. Commissioner*, 501 U.S. 868, 889 (1991); *CW Gov't Travel, Inc. v. United States*, 46 Fed. Cl.

---

[2] In light of this development, and with the parties' agreement, the court cancelled the scheduled hearing.

554, 557–58 (2000) (enumerating the multiple grounds for applying the justiciability doctrines to the Court of Federal Claims, in particular, and to Article I courts, in general).

The justiciability doctrine of ripeness circumscribes the court's review to cases that present realized rather than anticipated or hypothetical injuries. *United Public Workers of America v. Mitchell*, 330 U.S. 75, 89–90 (1947). A claim for relief is not ripe for adjudication when it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide*, 473 U.S. 568, 581 (1985). When reviewing an administrative action, the court evaluates two factors: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds* by *Califano v. Sanders*, 430 U.S. 99 (1977). A challenge to an administrative action must satisfy both factors, under *Abbott Laboratories*, in order to be ripe for judicial review. *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1581 (Fed. Cir. 1993). Under the first factor, "an agency decision is not ripe for judicial review until the allegedly offending agency has adopted a *final* decision." *NSK, Ltd. v. United States*, 510 F.3d 1375, 1384 (Fed. Cir. 2007) (emphasis added). In turn, an agency's decision is final, for the purposes of ripeness, only if it (1) "marks 'the consummation of the agency's decision-making process,' i.e., it must not be merely tentative or interlocutory, and (2) 'the action [is] one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Id.* at 1385 (quoting *Bennett v. Spear*, 520 U.S. 154, 177 (1997)).

While the ripeness inquiry is made at the time suit is initiated, mootness doctrine imposes a continuing requirement, such that a case, or claim, may become moot whenever "the issues it presents are *no longer* live." *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (emphasis added). In particular, a case or claim is moot when "(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and, (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. When both conditions are satisfied it may be said that the case is moot." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see Tunik v. Merit Sys. Prot. Bd.*, 407 F.3d 1326, 1331 (Fed. Cir. 2005). Where the challenged conduct has ended because of a defendant's voluntary cessation, "subsequent events [must make] it absolutely clear that the allegedly wrongful behavior [can] not reasonably be expected to recur." *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n.*, 393 U.S. 199, 203 (1968)).

Taken together, ripeness and mootness limit the court's review to violations that are both consummated, thus ripe for judicial decision, and continuing or likely to recur, thus leaving plaintiff dependent upon judicially crafted relief. As a result of the peculiar circumstances of this case—FEMA's final decision to cancel the solicitation, coming on the heels of plaintiff's overhasty protest—plaintiff's challenge to FEMA's reissuance plans (counts I–III) is left trapped between the devil and the deep blue sea of ripeness and mootness, and cannot hope to allege a justiciable controversy.

First, plaintiff's original protest has never been ripe for the court's review, because no final agency decision to reissue the solicitation has ever been before the court. Plaintiff repeatedly refers to "FEMA's decision" to re-open competition, *e.g.*, Pl.'s Mot. for Prelim. Inj. at 2, 5, yet fails to identify any action taken by FEMA to implement or even to formalize this

decision. Rather, plaintiff alleges only that "FEMA counsel notified Madison that a decision had been made to follow the GAO recommendation." Pl.'s Mot. for J. at 7. This stated intention, informally related to plaintiff via FEMA's counsel, neither marked the "consummation of the agency's decision-making process," nor ever determined any rights or obligations with respect to plaintiff, to TMI (the protestor at GAO), or to any other interested party. *See NSK*, 510 F.3d at 1385. At the time plaintiff filed this protest, FEMA retained fully the right to reconsider its tentative decision before taking any *final* action from which legal consequences would flow. Indeed, "courts have uniformly concluded that administrative agencies possess inherent authority to reconsider their decisions," for such "power to reconsider is inherent in the power to decide." *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008) ("*TKS*"). In *TKS*, upon remarkably similar facts, the Federal Circuit held unequivocally that an agency's "stated intention is just that, and leaves room for [the agency] to change course." *Id.* And change course FEMA did, deciding to cancel the solicitation rather than to proceed with reissuance, revealing plaintiff's challenge to the reissuance plans to have been bitterly unripe.

Plaintiff's motion to include the cancellation decision in its protest, *see* Am. Compl. ¶¶ 23–42—and the court's decision below to grant the motion—does not alter this. On the one hand, should the court ultimately find the cancellation decision unlawful, the court's authority would be limited to setting aside the cancellation and enjoining FEMA to resume its decision-making process. *See CW Gov't Travel*, 46 Fed. Cl. at 559 ("This court has no authority to select a contractor or order award of the contract to a protestor, but only to stay award or order a new solicitation.") (citing *Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1153 (Fed. Cir. 1994); *CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1575 (Fed. Cir. 1983)). In other words, plaintiff's potential success on its new claim can only restore the *status quo ante*—with FEMA yet undecided as to whether it will reissue the solicitation, proceed with award to plaintiff, or pursue some other course of action—leaving still unripe plaintiff's challenge to the agency's reissuance plans.

None of plaintiff's arguments to the contrary are availing. Plaintiff's initial assertion that, if the "cancellation is enjoined, FEMA's prior decision to . . . reissue [the solicitation] will be reinstated," is baseless. *See* Pl.'s Opp'n to Def.'s Renewed Mot. to Dismiss at 3. No "prior decision" to reissue the solicitation was ever made; rather, FEMA manifestly chose an alternative course of action. Plaintiff cannot avoid dismissal by speculating as to what FEMA might do. To accept plaintiff's invitation to prejudge the agency's future decision-making would impermissibly entangle the court in administrative policy and subject FEMA to improper judicial interference. *See Abbott Labs.*, 387 U.S. at 148–149; *Flast*, 392 U.S. at 95. Plaintiff's further attempt to avoid the ripeness issue by characterizing the cancellation as merely a "specific form of contracting action taken to implement" FEMA's reissuance plans, Pl.'s Opp'n to Def.'s Renewed Mot. to Dismiss at 3, defies both reality and logic. On their face, these two decisions—either to reissue the *identical* solicitation under a different classification code, or to cancel the solicitation altogether—are mutually exclusive. More to the point, FEMA decided to cancel the solicitation because the agency's needs changed "so substantially as to exceed what prospective offerors reasonably could have anticipated." Def.'s Renewed Mot. to Dismiss, App'x, Attachment A. Accordingly, the cancellation decision cannot possibly be said to "implement," but has *displaced* any prior intention to reissue the solicitation. In short, the cancellation of the solicitation is an independent agency action that cannot ripen plaintiff's challenge to the agency's initial reissuance plans.

Second, as to the mootness impediment, if the cancellation is ultimately upheld by the court, it would obviously render plaintiff's original protest (counts I–III) moot.  Certainly, it could then "be said with assurance that there is no reasonable expectation"—indeed, no expectation at all—that the agency would revisit its reissuance plans.  *See Davis*, 440 U.S. at 631.  Thus, even if FEMA's plans to reissue the solicitation had constituted a final agency decision ripe for judicial review, the cancellation, if upheld, would make it "absolutely clear that th[is] allegedly wrongful behavior" cannot recur, rendering plaintiff's challenge decidedly moot.  *See Laidlaw Envtl. Servs.*, 528 U.S. at 189.

Accordingly, trapped between the devil of ripeness and the deep blue sea of mootness, plaintiff's challenge to FEMA's reissuance plans cannot escape dismissal.[3]

## B.  Plaintiff Has Properly Sought To Supplement Its Complaint

FEMA's cancellation of the solicitation does not, however, render plaintiff's entire case a nullity.  The cancellation has not eradicated, but perpetuates plaintiff's injury: absent injunctive relief, plaintiff must still re-compete for the FEMA contract, no matter that it will be under a new, rather than a reissued, solicitation.  As the intended awardee, a fact uncontested by defendant, plaintiff surely had a "substantial chance" of receiving the contract award, but for the cancellation.  *See Info. Tech. & Applications Corp. v. United States*, 316 F.3d at 1319.  Plaintiff thus has standing as an "interested party," under 28 U.S.C. § 1491(b), to challenge the cancellation decision.  Moreover, the cancellation of a negotiated procurement is not an act wholly committed to agency discretion.  *See FFTF Restoration Co., LLC v. United States*, 86 Fed. Cl. 226, 244 (Fed. Cl. 2009) ("*FFTF*").  Rather, like *any* agency action made in connection with a procurement, the cancellation of a solicitation is subject to the court's review, pursuant to 28 U.S.C. § 1491(b), and may be set aside if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id.*  Accordingly, an agency's cancellation

---

[3] Although the court thus agrees with both of defendant's arguments for dismissal, the court declines, in this case, to sanction defendant's characterization of either ripeness or mootness as a *per se* limit on the court's jurisdiction.  The Supreme Court has consistently held that "ripeness doctrine is drawn *both* from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  *Nat'l Park Hospitality Ass'n v. Dept. of the Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57, n.18 (1993) (citing *Buckley v. Valeo*, 424 U.S. 1, 114 (1976))) (emphasis added).  Meanwhile, the Court has continued to vacillate as to where mootness doctrine is rooted, whether in the limitations imposed by Article III or in purely prudential considerations.  *Compare Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964) ("Our lack of jurisdiction to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy."), *and Laidlaw Envtl. Servs.*, 528 U.S. at 180 ("The Constitution's case-or-controversy limitation on federal judicial authority, Art. III, § 2, underpins both our standing and our mootness jurisprudence."), *with Honig v. Doe*, 484 U.S. 305, 332 (1988) (Chief Justice's concurrence arguing that mootness doctrine is rooted *entirely* in prudential considerations, and that it bears only "an attenuated connection [to Article III] that may be overridden where there are strong reasons to override it.").  As to either doctrine, the effect is the same: lingering uncertainty as to whether, and when, ripeness or mootness may operate as a limit upon the jurisdiction of a federal court.

decision must be supported by a "rational" or "reasonable" basis. *E.g.*, *Wetsel-Oviatt Lumber Co. v. United States*, 43 Fed. Cl. 748, 753 (Fed. Cl. 1999) ("This court's power to enjoin the improper cancellation of a solicitation is well settled . . . [if] the agency lacked a rational or reasonable basis for its cancellation decision."); *CFM Equip. Co.*, B-251344, 93-1 CPD ¶ 280, at *3 (Comp. Gen. 1993) ("As a general rule, in a negotiated procurement the contracting agency need only demonstrate a reasonable basis to cancel a solicitation after receipt of proposals."). Accordingly, because plaintiff has challenged the lawfulness of the cancellation decision, live controversy persists. The only question—readily answered in the affirmative, as explained below—is whether plaintiff may proceed with its new challenge by amending its complaint, rather than having to file a new petition.

Defendant contends that plaintiff's original complaint, in being unripe, suffered a jurisdictional defect that plaintiff may not be permitted to cure, and that plaintiff's only permissible course of action is to file a new complaint. Def.'s Opp'n to Pl.'s Mot. to Amend at 7–10. As noted, *supra* n.3, the jurisdictional character of ripeness doctrine is far from clear. Regardless, assuming, *arguendo*, that the lack of ripeness of plaintiff's original complaint is a jurisdictional defect, the overwhelming weight of authority permits plaintiff's attempt to cure that defect in its case.

Rule 15 of the RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS ("RCFC"), which closely tracks its number-sake in the FEDERAL RULES OF CIVIL PROCEDURE ("FRCP"), governs amended and renewed pleadings. Rule 15(a) addresses pleading amendments and requires that the "court should freely give leave [to amend] when justice so requires." RCFC 15(a). The Supreme Court has declared that "this mandate is to be heeded," and that the denial of leave to amend without a "justifying reason" falls outside a trial court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Rule 15(d) provides that "the court may, on just terms, permit a party to serve a renewed pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." RCFC 15(d). Importantly, "the same principles that support the liberal amendment of pleadings also apply to renewed pleadings." 3 James W. Moore, *Moore's Fed. Practice* § 15-30 (3d ed. 2009).

Plaintiff's amended complaint alters none of the allegations recited in the original complaint, but supplements these with allegations concerning events—namely, FEMA's cancellation decision—that post-date the original filing. Accordingly, plaintiff's filing is a *de facto* supplemental complaint, notwithstanding plaintiff's denomination of it as an "amended" complaint, and its admissibility is thus governed by Rule 15(d). *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 n.5 (Fed. Cir. 2008) ("It is Rule 15(d), not Rule 15(a), that governs supplemental complaints, even if the complaint is mislabeled as an amended complaint."); *Walton v. United States*, 80 Fed. Cl. 251, 265 (Fed. Cl. 2008) ("Because the amended complaint contains additional allegations concerning events that occurred after plaintiff filed his initial complaint, the court treats plaintiff's amended complaint as a *de facto* supplemental complaint.").

In turn, Rule 15(d) permits "supplementation even though the original pleading is *defective* in stating a claim or defense." RCFC 15(d) (emphasis added). The "existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). Conversely, the "Supreme

Court has confirmed that supplemental pleadings can be used to cure subject matter jurisdiction deficiencies." *Prasco*, 537 F.3d at 1337 (citing *Mathews v. Diaz*, 426 U.S. 67, 75 (1976)). *Mathews* had "little difficulty with [plaintiff's] failure to file an application . . . that was a non-waivable condition of jurisdiction . . . [because plaintiff] satisfied this condition while the case was pending . . . [and a] supplemental complaint in the District Court would have eliminated this jurisdictional issue." 426 U.S. at 75. The Supreme Court has also allowed plaintiffs to cure jurisdictional defects by *amendment* to their pleadings, pursuant to other federal rules. In *Newman-Green*, the Court allowed the plaintiff to cure a jurisdictional defect in its original complaint, by removing a dispensable non-diverse party, pursuant to FRCP 21. 490 U.S. at 837 (upholding the Court of Appeals decision to grant plaintiff's motion for leave to amend). In contending that *Newman-Green* "reinforced this rule" that jurisdiction "depends on the state of things at the time the action is brought," defendant mistakenly focuses on that opinion's non-dispositive discussion of 28 U.S.C. § 1653,[4] and neglects the ultimate holding of the seven-justice majority. Def.'s Opp'n to Pl.'s Mot. to Amend at 7.

The court also finds unsupported defendant's contention that, where an original claim is jurisdictionally defective, Rule 15(d) permits only those supplemental pleadings that cure the defect in that very claim. *See* Def.'s Opp'n to Pl.'s Mot. to Amend at 7–10. For this proposition defendant cites *Mathews* and the Federal Circuit's opinion in *Black v. Secretary of Health and Human Services.*, 93 F.3d 781 (Fed. Cir. 1996). *Id.* Yet, while *Black* and *Mathews* are examples where the supplemental pleading cured the defect in the original claim, neither case purported to limit or announce an exhaustive list of the types of jurisdictional defect that may be cured by a supplemental pleading. Indeed, *Black* made the unqualified pronouncement that "defects in a plaintiff's *case*—even jurisdictional defects—can be cured while the case is pending if the plaintiff obtains leave to file a supplemental pleading under Rule 15(d) reciting post-filing events that have remedied the defect." 93 F.3d at 790 (citing *Mathews*, as well as consistent holdings by the Courts of Appeals in three other circuits) (emphasis added).

Therefore, assuming, *arguendo*, that plaintiff's original claim suffered a jurisdictional defect, plaintiff may, pursuant to Rule 15(d), cure the defect in its *case* via supplemental pleading. Plaintiff has done so, by adding a new claim that challenges FEMA's cancelation decision. As already noted, the cancellation of a negotiated procurement is subject to the court's review, and may be set aside if found to lack a rational basis. *See FFTF*, 86 Fed. Cl. at 244. And, unlike the agency's tentative and ultimately discarded plan to reissue the solicitation, FEMA's cancellation is a final decision, marking "the consummation of the agency's decision-making process." *NSK*, 510 F.3d at 1385. In short, the new claim recited in plaintiff's amended (or supplemental) complaint alleges a justiciable controversy within the court's jurisdiction.

Defendant does not contest this salient fact. Instead, defendant seeks to turn *Foman* on its head, arguing that plaintiff "failed to meet its burden" of demonstrating why justice requires the court to grant leave to amend (or supplement). Def.'s Opp'n to Pl.'s Mot. to Amend at 5–6.

---

[4] Section 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." The Court found that this provision "addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." 490 U.S. at 831. Accordingly, the plaintiff in *Newman-Green* could not rely on the authority of 28 U.S.C. § 1653 to cure the jurisdictional defect in question, though it could properly rely on FRCP 21 to achieve that end. *Id.*

Of course, *Foman* made clear that it is all but the court's burden to justify a *denial* of leave to amend. 371 U.S. at 182.

Alternatively, defendant argues that "even if [the] challenge to the cancellation could somehow succeed, . . . [m]aintaining an action upon the court's docket only to dismiss it later . . . for lack of jurisdiction is an exercise in futility, another long-accepted basis for denying a motion to amend." Def.'s Opp'n to Pl.'s Mot. to Amend at 6 (citing *Foman*, 371 U.S. at 182). It is a strained application of *Foman* to suggest that the possibility of plaintiff's *success* on the merits of its challenge to the cancellation decision renders the addition of that claim an exercise in futility. Moreover, seeing FEMA's cancellation decision overturned would be more than a Pyrrhic victory for plaintiff, for more is at stake than plaintiff's attempt to save its original protest (counts I–III) from dismissal. If the court were to deny plaintiff's motion to amend (or rather to supplement) its complaint, as defendant proposes—thus leaving the agency's cancellation decision undisturbed—plaintiff would inevitably have to re-compete for the contract that it believes it had all but won. However, a possible decision by the court to set aside FEMA's cancellation would return plaintiff to the *status quo ante* of the agency still deciding what course of action to take, under which, in defendant's own words, "FEMA's final course of action may satisfy [plaintiff]." Def.'s Mot. to Dismiss at 7. In other words, plaintiff would then have a chance of securing the FEMA contract for which it competed.

To be sure, conceding plaintiff's right to challenge FEMA's cancellation of the solicitation, defendant all but invited plaintiff to file a new complaint. Def.'s Opp'n to Pl.'s Mot to Amend at 10. Yet, as the Federal Circuit noted in *Black*, "[t]here would be no more than a formal distinction between filing a supplemental pleading and filing a new petition with the additional . . . allegations included, a procedure the government concedes would be valid." 93 F.3d at 791. Plaintiff "should not be compelled to jump through these judicial hoops merely for the sake of hypertechnical jurisdictional purity." *Newman-Green*, 490 U.S. at 837. The rules provide that they are to be construed "to secure the just, speedy, and inexpensive determination of every action." RCFC 1. If the court were to deny plaintiff's motion to amend (or, rather, to supplement) its complaint, forcing plaintiff to file a new petition, nothing would be gained save the court's collection of a new filing fee. To paraphrase the Supreme Court, it is *far* too late in the day, and entirely contrary to the spirit of the rules of the court and to longstanding principles, for decisions on the merits to be avoided or delayed on the basis of such mere technicalities. *See Foman*, 371 U.S. at 181–82.

### III. CONCLUSION

For the forgoing reasons, the court: (1) grants plaintiff's motion to amend, deems the proposed amended complaint to be a supplemental complaint, and admits the supplemental complaint; (2) grants defendant's renewed motion to dismiss counts I–III, and, accordingly, (3) denies-as-moot all outstanding motions relating to the dismissed counts.

**IT IS SO ORDERED.**

s/ *Lawrence J. Block*<br>Lawrence J. Block<br>Judge